**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

RUBY TUESDAY, INC.,
a Georgia Corporation,

       Plaintiff,

       v.                           Case No.: 3:09-cv-438-RV-MD

EMMANUEL SHEPPARD & CONDON PA,
a Florida Professional Association;
ALAN B. BOOKMAN, individually; and
CHARLES P. YOUNG, individually,

       Defendants.

_____/

## ORDER

This case involves allegations of legal malpractice. The defendants have filed a motion to dismiss (doc. 11), and the plaintiff has filed a response in opposition.

**I. Background**

The plaintiff Ruby Tuesday, Inc., is a national restaurant chain. The defendant Emmanuel Sheppard & Condon PA is a law firm with its principal place of business in Pensacola, Florida ("the Firm"). Defendants Alan B. Bookman and Charles P. Young are partners at the Firm. The following facts are taken from the plaintiff's complaint (and attachments thereto), and they are assumed true for purposes of this order.

In 1996, Ruby Tuesday entered into a contract with Florida Soccer LTD, LLP ("Florida Soccer") to purchase a restaurant site fronting Highway 29 in Pensacola.[1]

---

[1]

       Florida Soccer was successor in interest to the original seller, Pensacola Soccer Complex, LTD. For ease of reference, and to avoid confusion, this order will refer only to the successor in interest.

*Case No.: 3:09-cv-438-RV-MD*

Title to the property was taken in the name of Ruby Tuesday's nominee, L&V Holdings II Corporation, a real estate holding company. The property was 1.5 acres of a larger 50-acre tract, which consisted of the front 10 acres adjacent to the restaurant site ("the front 10"), and the back 40 acres of undeveloped property ("the back 40"). As a material term of the contract, Florida Soccer agreed to impose and enforce certain restrictive covenants on the entire 50-acre tract, including restrictions on parking and the right to subdivide and grant easements unilaterally. In addition to these general restrictions on the entire 50 acres, there was a more specific restriction that prohibited any restaurant "serving alcohol on the adjacent Property that consists of approximately ten (10) acres" ("the Use Restriction"). In November 1997, L&V and Florida Soccer executed a "Declaration" to reflect the restrictions and covenants ("the Declaration"). The Declaration mistakenly identified and encumbered the full 50-acre parcel with the Use Restriction. The Declaration was recorded in the County's Official Records Book, and, as the defendants note in the motion to dismiss, this error went unnoticed for some period of time.[2]

By 1999, Florida Soccer was behind on its mortgage payments and was sued in a foreclosure action by the First National Bank of Florida. During the course of the foreclosure action, Florida Soccer served discovery on Ruby Tuesday, in response to which Ruby Tuesday retained the Firm "with the understanding that this matter may

---

[2]

In response to the defendants, Ruby Tuesday claims "there is no evidence [to suggest that] imposition of certain restrictions on the entire 50-acre tract was a mistake in the first place." To the extent plaintiff is suggesting that the Use Restriction might have been correctly applied to the entire 50-acre tract, the claim is belied by the contract, which, as noted, expressly limited the Use Restriction to the "adjacent Property that consists of approximately ten (10) acres." Regardless of who was at fault for the wording of the Declaration, regardless of whose responsibility it was to amend it, and regardless of the *other* restrictions that were properly applied against all 50 acres, it would seem inarguable that it was, indeed, a mistake for the subject Use Restriction to apply to the entire tract.

*Case No.: 3:09-cv-438-RV-MD*

grow into more complex litigation." Bookman was the primary attorney responsible for representing and counseling Ruby Tuesday in all matters relating to the property.

In February 2000, in order to avoid foreclosure, Florida Soccer entered into a contract to sell the undeveloped property to Terry Thomas. The Thomas contract was subject to various contingencies, including release of the Use Restriction on the back 40.[3] Florida Soccer advised Bookman of the Thomas contract and requested that he (Bookman) have Ruby Tuesday release the Use Restriction by May 26, 2000. Failure to do so by that date, Florida Soccer advised, will "in all likelihood . . . cause the buyer to walk." On or prior to May 10, 2000 --- more than two weeks before the Florida Soccer deadline --- Ruby Tuesday specifically "instruct[ed]" the Firm to amend the Declaration so that the Use Restriction would only apply to the front 10. However, Bookman and the Firm did not release the Use Restriction by May 26th. The Thomas sale fell through. Several months later, in August 2000, the bank foreclosed and Florida Soccer lost the property. More than a year later, on November 20, 2001, the Firm completed and recorded an Amended Declaration that limited the Use Restriction to the front 10.

In January 2004, asserting negligence and tortious interference claims, Florida Soccer sued Ruby Tuesday for the profit Florida Soccer would have allegedly made on the Thomas deal if the Use Restriction had been lifted prior to the foreclosure. Florida Soccer claimed that it was Ruby Tuesday's failure to timely release the Use Restriction that caused the Thomas Contract to fall through. Bookman and the Firm represented Ruby Tuesday in that litigation. Upon receipt of Florida Soccer's complaint, Bookman brought in attorney Young to assist on the case. The defendants successfully procured

---

[3]

At first, the Thomas contract required the release of the Use Restriction from the entire 50-acre tract (less only the 1.5-acre restaurant site). However, it appears the parties reached a compromise to only release the Use Restriction from the back 40.

summary judgment in favor of Ruby Tuesday on the negligence claim (apparently based on the Economic Loss Rule), but the case eventually went to a jury trial on the tortious interference claim. Following a one-day trial --- during which the defendants presented only one witness and asked him only three questions --- the jury found that Ruby Tuesday had tortiously interfered with the Thomas deal, awarded Florida Soccer $914,836.50 in damages (plus interest), and judgment was entered accordingly. After appealing that judgment, but then dismissing its appeal, Ruby Tuesday filed this case against its former lawyers, alleging both negligence and breach of fiduciary duty, and seeking disgorgement of attorney fees and costs.

The defendants move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. Standard of Review

The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is "exceedingly low." *See Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 703 (11th Cir. 1985). Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. State of Alabama,* 30 F.3d 117, 120 (11th Cir. 1994) (citation omitted). The Federal Rules do not require a plaintiff to set out in detail the facts upon which he bases his claim. Rule 8(a) only requires a "short and plain statement" showing that he is entitled to relief. Nevertheless, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *see also Ashcroft v. Iqbal,* --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) ("the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation'"). Thus, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal, supra,* --- U.S. ---,

129 S. Ct. at 1949 (quoting *Twombly, supra,* 550 U.S. at 570). This rule does not "impose a probability requirement at the pleading stage." *Twombly,* 550 U.S. at 556. The test is whether the complaint "succeeds in 'identifying facts that are suggestive enough to render [the claim] plausible.'" *See Watts v. Florida Int'l University,* 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly, supra,* 550 U.S. at 556). "Plausible" is a level of certainty somewhere between "possible" and "probable." *See Iqbal, supra,* 129 S. Ct. at 1949.

### III. Discussion

As noted above, Ruby Tuesday seeks damages and disgorgement of fees on its claims of negligence and breach of fiduciary duty. In this context, the negligence and breach of fiduciary duty claims are merely alternative claims for what is typically called "legal malpractice." *See, e.g., Resolution Trust Corporation v. Holland & Knight,* 832 F. Supp. 1528, 1531-32 (S.D. Fla. 1993) (breach of fiduciary duty "constitutes a wrong which is distinct from and independent from professional negligence but still comprises legal malpractice"; thus, negligence and breach of fiduciary duty "represent two distinct theories of malpractice"). With respect to its claims of legal malpractice, Ruby Tuesday has made numerous factual allegations, including that the defendants: failed to follow Ruby Tuesday's instructions and directions regarding the modifications of the Use Restriction; failed to conduct adequate discovery; failed to present certain evidence; failed to call key witnesses; and failed to raise and preserve specific legal arguments.

Under Florida law, a legal malpractice claim is comprised of three elements: (1) the attorney's employment; (2) his neglect of a reasonable duty; and (3) proof that his neglect of duty was the proximate cause of loss to the client. *See Law Office of David J. Stern, P.A. v. Security Nat'l Serving Corp.,* 969 So.2d 962, 966 (Fla. 2007). In this case, the defendants contend that dismissal is appropriate because the latter two elements are not satisfied. Specifically: (1) the complaint does not set forth the alleged

malpractice in requisite detail (*i.e.*, "Ruby Tuesday cannot persuade the Court that it is plausible that Defendants' actions or inaction caused Ruby Tuesday to lose a jury trial without explaining to the Court just what Defendants allegedly did wrong"); (2) interrelatedly, the complaint is comprised of "insufficient, threadbare, and conclusory" allegations that do not establish causation (*i.e.*, Ruby Tuesday has not shown that the defendants' alleged negligence was "more likely than not" the cause of its damages). Assuming *arguendo* that legal malpractice has been adequately pled, the defendants further contend that the complaint fails to state a cause of action for disgorgement of fees because it would result in a windfall to Ruby Tuesday.

With respect to the first two arguments, the defendants begin by noting "how difficult it is to determine whether, if presented to a jury in a trial, a particular fact or witness would have changed the outcome of the case, especially when considered in light of all the other facts, witnesses, rulings, and arguments, as well as the individual characteristics of the jurors themselves." Consequently, according to the defendants, a malpractice complaint is due to be dismissed unless the plaintiff first identifies what specific piece of evidence or witness the lawyer failed to produce, what that witness would have said or what the piece of evidence would have shown, and then, to satisfy causation, the plaintiff must allege specific facts "that demonstrate how that witness' testimony [or the other evidence] would have turned a loss into a victory."

The defendants' contention is not the appropriate standard at the motion to dismiss stage, however, as it would require a malpractice plaintiff to state a claim that is more probable than plausible. *Cf. Nova Casualty Co. v. Lucia,* 2009 WL 2579313 (M.D. Fla. Aug. 19, 2009) (complaint satisfied *Twombly* and survived dismissal where plaintiff succinctly alleged all three elements of legal malpractice, notwithstanding the defendants' argument that the complaint was "based on conclusive allegations"). If a malpractice plaintiff were required to do what the defendants contend is necessary at this stage in the proceedings, it would be extraordinarily difficult for any complaint

to survive dismissal. Indeed, as defendants themselves note elsewhere in their motion, "it is almost impossible to show that 'the nail lost the kingdom,' such as where a case survives summary judgment and motions for a directed verdict, is submitted to a jury, and the jury decides the case, but one witness out of many (or one fact out of many) has not been presented to the jury. How could one ever know whether that fact, or that witness, would have changed the outcome?"

Upon my review of the allegations in the complaint, I conclude that the plaintiff has alleged enough facts to state a claim to relief that is plausible on its face. The complaint contains extensive allegations of malpractice, any one or combination of which could support a jury finding in its favor. Accordingly, the defendants' motion to dismiss on that basis must be denied.

With respect to the disgorgement claim, the defendants seek dismissal because "Ruby Tuesday does not allege that the Defendants' malpractice caused Florida Soccer to sue Ruby Tuesday in the first place," and, consequently, the plaintiff did not "incur[] fees defending this case *only* because of the Defendants' malpractice." In other words, according to defendants, Ruby Tuesday would have incurred attorney fees "regardless of the outcome of the case," so to order disgorgement would amount to a windfall in excess of what it would take to make it whole. However, construing the allegations of the complaint in plaintiff's favor, as I am required to do for this motion, it appears that Ruby Tuesday may indeed be arguing that the alleged malpractice caused Florida Soccer to file suit. In particular, the complaint alleges that by no later than May 10, 2000 (which was more than two weeks before the date that Thomas threatened to "walk" away from the deal), Ruby Tuesday had specifically "instruct[ed] the Firm to amend the Declaration so that it would not apply to the back 40. Ruby Tuesday thus alleges that the defendants "fail[ed] to follow [its] directions regarding the scope and modification of the Use Restriction," and that alleged failure, as well as defendants' litigation errors, led to its damages.

*Case No.: 3:09-cv-438-RV-MD*

In short, the plaintiff has stated a claim for disgorgement of the fees and costs it incurred during the Florida Soccer litigation as it is plausible that it incurred those expenses because of defendants' alleged malpractice prior to, and during, that case.

**IV. Conclusion**

For the above reasons, the defendants' motion to dismiss (doc. 11) is DENIED.

DONE and ORDERED this 30th day of December, 2009.


*/s/ Roger Vinson*
ROGER VINSON
Senior United States District Judge